# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION           MASTER FILE NO. 12-md-02311

_____

In Re: Radiators           HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions           13-01002
End-Payor Actions           13-01003

_____/

**OPINION AND ORDER DENYING DEFENDANTS MITSUBA CORPORATION AND AMERICAN MITSUBA CORPORATION'S MOTION TO DISMISS THE DEALERSHIP PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND END-PAYOR PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Before the Court is Defendants Mitsuba Corporation and American Mitsuba Corporation's (collectively "Mitsuba Defendants") Motion to Dismiss the Dealership Plaintiffs' Consolidated Amended Class Action Complaint and End-Payor Plaintiffs' Consolidated Amended Class Action Complaint (Doc. No. 59 in 13-01002; Doc. No. 53 in 13-01003). The Court set a January 28, 2015, hearing date for the motion, but the parties waived oral argument. For the reasons that follow, the motion is **DENIED**.

## I. INTRODUCTION

Automobile Dealer Plaintiffs ("ADPs") and End-Payor Plaintiffs ("EPPs") (collectively "Indirect Purchaser Plaintiffs" or "IPPs") bring class actions against Defendants under federal and state law based on Defendants' alleged antitrust conspiracy. Although the IPPs filed separate complaints, Mitsuba Defendants challenge both complaints in its motion.

Defendants are manufacturers or sellers of Radiators that are manufactured or sold in the United States. Defendants include Calsonic Kansei Corporation, Calsonic Kansei North America, Inc., DENSO Corporation, DENSO International America, Inc., T.Rad Co., Ltd. , T.Rad North America, Inc., and Mitsuba Corporation, and American Mitsuba Corporation. (Doc. No. 28 in 13-01003 at ¶ 1). According to Defendants, the complaints against them must be dismissed because IPPs cannot stretch their claim that Defendants conspired to fix the prices of Radiators to include either Mistusba Defendants or to radiators fans.

## II. FACTUAL ALLEGATIONS

Defendants' conspiracy is alleged to have targeted both the automotive industry and consumers. IPPs assert that Mitsuba Defendants "manufactured, marketed and/or sold radiators that were purchased throughout the United States, including in this District, during the Class Period." (Case No. 13-01002, Doc. No. 31 at ¶ 123; Case No. 13-01003, Doc. No. 28 at ¶ 85). IPPs define "Radiators," which help prevent "automotive vehicles from overheating," to include radiator fans. (Doc. No. 31 at ¶ 2; Doc. No. 28 at ¶¶ 3, 90).

Radiators are a form of heat exchanger, usually filled with a combination

of water and antifreeze, which extracts heat from inside the engine block. The radiator indirectly exposes coolant, heated by traveling through the engine block, to cool air as the vehicle moves. Radiators are easily damaged due to their location at the front of the vehicle. As a consequence, Radiators require more frequent replacement than other automotive parts.

Id.

The manufacture and sale of Radiators is a 3.35 billion dollar industry in the United States. (Doc. No. 31 at ¶ 4; Doc. No. 28 at ¶ 4). On September 26, 2013, the Department of Justice announced that T.Rad Co. Ltd. had agreed to plead guilty and pay a $13.7 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of automotive parts, including Radiators, sold to automobile manufacturers in the United States and elsewhere. (Doc. No. 31 at ¶ 5; Doc. No. 28 at ¶ 6). The same day the Department of Justice ("DOJ") announced that Mitsuba Corporation agreed to plead guilty and pay a $135 million criminal fine for its role in a conspiracy to fix, stabile and maintain the prices of certain automotive parts installed in automobiles sold in the United States and elsewhere. (Doc. No. 31 at ¶¶ 6-7; Doc. No. 28 at ¶ 7). Mitsuba Corporation's guilty plea includes radiator fans amount the certain automotive parts. (Doc. No. 61, Ex. A at 5). Moreover, in its guilty plea, Mitsuba Corporation and its subsidiaries pledged cooperation in the Department of Justice's ongoing automotive parts investigation. (Id.) In exchange for the cooperation, the DOJ has agreed to refrain from criminally prosecuting Mitsuba and its subsidiary for price-fixing certain automotive parts, including radiator fans. (Doc. No. 31 at ¶ 7; Doc. No. 28 at ¶ 8). Mitsuba Corporation and three executives also pleaded guilty to obstruction of justice, including destruction and concealment of evidence. (Doc. No. 31

at ¶¶ 140-144; Doc. No. 28 at ¶¶ 114-116).

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief.  First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).   When reviewing a motion to dismiss,  the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' "  Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a section 1 Sherman Act claim.  It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

## IV. ANALYSIS

It is undisputed that Mitsuba Corporation participated in the criminal conspiracy to rig bids, fix prices, and allocate the supply of radiator fans. In addition, Mitsuba Corporation admitted that "high-level personnel participated in a conspiracy with other persons and entities engaged in the manufacture and sale of" certain automotive parts, which included radiator fans. (Doc. No. 61 in 13-01003, Ex. A). Mitsuba Corporation also admitted to antitrust violations in windshield wiper systems and components, windshield washer systems and components, starter motors, power window motors, and fan motors, used to turn radiator cooling fans. (Id.)                .

According to Mitsuba Defendants, the claims lodged against them rest entirely on the guilty plea, which involved radiator fans that are neither interchangeable nor the functional equivalent of radiators. The Court disagrees. First and foremost, the Court observes that Mitsuba Corporation's guilty plea is not the sole basis for the allegations against Mitsuba Defendants. IPPs' complaints detail international government investigations that resulted in the guilty pleas of other defendants for their part in the price-fixing and bid-rigging of Radiators as well as the market conditions that facilitated the conspiracy. These are the type of allegations found to satisfy Twombly. Specifically, the Japan Fair Trade Commission fined T.Rad Co., Ltd. and Calsonic

5

Kansei Corporation for antitrust violations. (Doc. No. 31 at ¶ 9; Doc. No. 28 at ¶ 108). In addition, T. Rad. Co. Ltd. also pleaded guilty to antitrust conduct arising out of the Department of Justice investigation. Mitsuba Defendants are correct, however, that the complaints contain no allegation that a Radiator and radiator fan stem from a single base unit that is then customized for a particular product. See United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956) (addressing whether the defendant had monopoly power, and holding a market consists of "interchangeable" goods). Still, the Court does not agree that by defining Radiators to encompass radiator fans, IPPs have rendered the allegations in the complaints nonsensical.

To the extent that Mitsuba Defendants rely on E.I. du Pont de Nemours to support their position, their reliance is misplaced. That case was decided after "a lengthy trial." 351 U.S. 379. Consequently, the decision arose only after evidence was presented. In contrast, the assessment of a market raised through a Rule 12(b)(6) motion requires the Court to accept Plaintiffs' averments as true. Here, Indirect Purchaser Plaintiffs have alleged Mitsuba Defendants sold Radiators, that were purchased throughout the United States during the Class Period. (Doc. No. 31 at ¶ 123; Doc. No. 28 at ¶ 85). Radiators are defined to include radiator fans. The definition is comparable to the definition this Court found to satisfy Rule 12(b)(6) in the wire harness litigation, wherein the plaintiffs defined wire harness products to include a number of related component products. Further, the Court notes that specifying the precise boundaries of a product market prior to discovery is not required by Twombly. See In re Fasteners Antitrust Litig., No. 08-MD-1912, 2011 WL 3563989 at *10 (E.D. Pa. Aug. 12, 2011).

Next, Mitsuba Defendants assert that because they did not manufacture finished radiators units, they are not competitors of the other Defendants in this litigation. In support of this contention, Mitsuba Defendants rely on Care Heating & Cooling Inc. v. Am. Standard, Inc., 427 F.3d 1008, 1013 (6th Cir. 2005) (affirming the dismissal of the plaintiff's antitrust suit because the plaintiff failed to plead a horizontal price-fixing conspiracy where defendants included a manufacturer and a distributor). In that case, the plaintiff filed suit after the defendant refused to approve the plaintiff as an authorized dealer of the defendant's product. The appellate court affirmed the lower court's dismissal of the lawsuit for failure to state a claim under the Sherman Antitrust Act, observing, "Horizontal conspiracies involve agreements among competitors at the same level of market structure to stifle trade. . . ." Id. at 1013.

The decision, which addressed a manufacturer/distributor relationship, is not persuasive. Although Mitsuba Defendants claim they had no motive to conspire with their customers and potential customers to raise the price on parts that were sold or might have sold to those very same customers, this is not the relationship alleged by IPPs. The nature of Mitsuba Defendants' relationship with other Defendants is not limited to a supplier/customer relationship. Mitsuba Corporation pleaded guilty to price-fixing multiple component parts, and its relationship to other Radiator Defendants cannot be assessed at this stage of the proceedings, particularly when there is overlap of some Defendants in the other component parts to which Mitsuba Corporation pleaded guilty.

For this reason, Texaco Inc. v. Dagher, 547 U.S. 1, 5-6 (2006) (finding the defendants were not competitors capable of a horizontal price-fixing conspiracy

7

because they "did not compete with one another in the relevant market") is not persuasive. The petitioners in Texaco had engaged in a joint venture to "refine and sell gasoline in the western United States under the two companies' original brand names." Id. at 1. The Supreme Court rejected the claim of the respondents, service station owners, who alleged "that, by unifying gas prices under the two brands, petitioners had violated the per se rule against price-fixing long recognized under § 1 of the Sherman Act." Id. (citation omitted). In contrast to the business relationship condoned by the Supreme Court, here there are no factually allegations to suggest that Defendants were not competitors, but "instead participated in the [Radiator] market jointly through their investments." Id. at 6.

    In sum, even if Mitsuba Defendants manufactured and sold only radiator fans, one of the products identified as making up a Radiator, they are not saved by the limited product involvement. See In re TFT-LCD (Flat Panel) Antitrust Litig., MDL NO. 1827, 2010 WL 2629728 (N. D. Cal. June 29, 2010) (assessing the argument that those defendants that have been investigated for anticompetitive conduct in a different market rendered the plaintiffs' allegations of participating in a global conspiracy in a different specified market more plausible). Mitsuba Defendants pleaded guilty to price-fixing radiator fans as well as other component parts in the MDL litigation involving different markets. A plea is not needed to establish the viability of the complaints. Moreover, Mitsuba Corporation's guilty plea does not dictate the parameters of the antitrust claims alleged by IPPs. See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010). IPPs use the term "Radiators" to encompass radiator fans. These allegations are sufficient to state a claim.

## IV. CONCLUSION

For the reasons stated above, Mitsuba Defendants' motion is **DENIED.**

**IT IS SO ORDERED**.


Date:   February 26, 2015                             s/Marianne O. Battani
                                                                    MARIANNE O. BATTANI
                                                                    United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 26, 2015.

                                                                    s/ Kay Doaks
                                                                    Case Manager