# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| PRODUCT(S):<br><br>RADIATORS & ATF WARMERS | 2:13-cv-01003-MOB-MKM<br>2:13-cv-10803-MOB-MKM<br>2:13-cv-14225-MOB-MKM |
| THIS DOCUMENT APPLIES TO:<br>ALL END-PAYOR ACTIONS | Hon. Marianne O. Battani |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 30th day of July, 2015 ("Execution Date") by and between T.RAD Co., Ltd. and T.RAD North America, Inc. (together, "T.RAD"), and End-Payor Plaintiffs Class Representatives (collectively, "End-Payor Plaintiffs"), both individually and on behalf of a class of end-payor indirect purchasers of ATF Warmers and Radiators (the "Settlement Classes"), as more particularly defined below.

WHEREAS, End-Payor Plaintiffs are prosecuting the above *In Re Automotive Parts Litigation,* Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation"), Case No. 12-cv-01003 and Case No. 2:13-cv-14225-MOB-MKM (the "Actions") on their own behalf and on behalf of the Settlement Classes against, among others, T.RAD;

WHEREAS, End-Payor Plaintiffs allege that they were injured as a result of T.RAD's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for ATF Warmers (as defined below) and

Radiators (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' operative complaints in the Actions (the "Complaints");

WHEREAS, T.RAD denies End-Payor Plaintiffs' allegations and has asserted defenses to End-Payor Plaintiffs' claims;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for T.RAD and this Agreement has been reached as a result of those negotiations;

WHEREAS, End-Payor Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the Actions and have concluded that resolving the claims against T.RAD, according to the terms set forth below, is in the best interest of End-Payor Plaintiffs and the Settlement Classes because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that T.RAD has agreed to provide pursuant to this Agreement;

WHEREAS, the Actions will continue against Defendants (as defined below) that are not Releasees (as defined below);

WHEREAS, T.RAD, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against T.RAD with respect to Radiators based on the allegations in the Action, as more particularly set out below;

2

WHEREAS, T.RAD has agreed to provide Cooperation to End-Payor Plaintiffs in the ongoing prosecution of the Actions as set forth in this Agreement, and such Cooperation will reduce End-Payor Plaintiffs' substantial burden and expense associated with prosecuting the Actions; and

WHEREAS, End-Payor Plaintiffs recognize the benefits of T.RAD's Cooperation and recognize that because of joint and several liability, this Agreement with T.RAD does not impair End-Payor Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Classes may be entitled in the Actions:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs as to End-Payor Plaintiffs, the Settlement Classes, or T.RAD, subject to the approval of the Court, on the following terms and conditions:

A.   Definitions.

1.    "ATF Warmers" shall refer to automatic transmission fluid warmer or cooler devices located in the engine compartment of a vehicle that moderate the temperature of the automatic transmission fluid.

2.    "Cooperation" shall refer to those provisions set forth below in Paragraphs 33-43.

3.    "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material provided by T.RAD under the terms of this Agreement.

4.    "Defendant" means any party named as a defendant in the Actions at any time up to and including the date when the Court has entered a final order certifying the Settlement

Classes described in Paragraph 13 and approving this Agreement under Federal Rule of Civil Procedure 23(e).

5.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information.   A draft or non-identical copy is a separate document within the meaning of this term.   For purposes of this Agreement, English language translations in TRAD's possession, custody or control are included.

6.     "End-Payor Plaintiff Class Representatives" means those Settlement Class Members, as defined in Paragraph 15 below, who are named plaintiffs in the Complaints.

7.     "Indirect Purchaser States " means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

8.     "Protective Order" means the Confidentiality Agreement and Protective Order between T.RAD and the End-Payor Plaintiffs and Automobile Dealership Plaintiffs governing the provision of information pursuant to the cooperation obligations of this Agreement and the corresponding section of T.RAD's settlement agreement with the Automobile Dealership Plaintiffs, and to be submitted for approval by the Court in the MDL Litigation simultaneously with the motion for preliminary approval of this Agreement.   Unless and until such Protective Order is entered by the Court, the provisions of the protective order in the Wire Harness Cases, 2:12-cv-00103 (the "Wire Harness Protective Order" shall apply to such provision of

4

information, except that nothing in the Wire Harness Protective Order shall prevent the End-Payor Plaintiffs from using such information in the prosecution of claims in the MDL Litigation.

9.     "Radiators" means any and all heat exchangers or other devices that help prevent automotive vehicle engines from overheating or otherwise regulate the temperature of the engine compartment of a vehicle and the fluids passing through it, including all devices physically attached to and sold by T.RAD as part of a radiator.  Radiators includes but is not limited to heater cores, oil coolers, intercoolers, coolant pumps, fuel cell cooling units and radiator fans.

10.    "Released Claims" means the Claims described in Paragraph 23.

11.    "Releasees" means (i) T.RAD, (ii) all of T.RAD's past and present direct and indirect parent and subsidiary companies and affiliates, including their respective predecessors, successors and assigns, and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and entities listed in (i) and (ii).  "Releasees" does not include any defendant in the MDL Litigation other than T.RAD.

12.    "Releasors" shall refer to End-Payor Plaintiff Class Representatives and the members of the Settlement Classes, as defined in Paragraph 13, below, and to their past and present officers, directors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

13.    For purposes of this Agreement, the "Settlement Classes" are defined as follows:

(a) "ATF Warmers Settlement Class" is defined as:

5

All persons and entities who, from November 1, 2002, through the execution date of this Agreement (the "Execution Date") purchased or leased a new vehicle in the United States not for resale, which included one or more ATF Warmer(s) as a component part, or indirectly purchased one or more ATF Warmer(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the ATF Warmers Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased ATF Warmers directly or for resale.

(b) "Radiators Settlement Class" is defined as:

All persons and entities who, from February 1, 2001, through the execution date of this Agreement (the "Execution Date"), purchased or leased a new vehicle in the United States not for resale, which included one or more Radiator(s) as a component part, or indirectly purchased one or more Radiator(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Radiators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Radiators directly or for resale.

14. "Settlement Class Counsel" shall refer to the law firms of:

Cotchett, Pitre, & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Robins Kaplan LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022

Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

15. "Settlement Class Member" means each member of the Settlement Classes who has not timely elected to be excluded from the Settlement Classes.

16. "Settlement Amount" shall be US $7,410,000, and the "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest earned on that amount as set forth in Paragraph 25. The allocation of the Settlement Fund to the Settlement Classes defined in Paragraph 13 above shall be determined by Settlement Class Counsel and subject to approval by the Court after notice to the Settlement Classes as directed by the Court.

B.   Approval of this Agreement and Dismissal of Claims Against T.RAD.

17. End-Payor Plaintiffs and T.RAD shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Actions as to the Releasees only.

18. Within thirty (30) days after the execution of this Agreement, End-Payor Plaintiffs shall submit to the Court motions seeking preliminary approval of this Agreement (the "Preliminary Approval Motions"). The Preliminary Approval Motions shall include the

7

proposed form of an order preliminarily approving this Agreement. The text of this proposed order shall be agreed upon by End-Payor Plaintiffs and T.RAD before submission of the Preliminary Approval Motion.

19.     End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs (the "Notice Motion"). In order to mitigate the costs of notice, the End-Payor Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

20.     End-Payor Plaintiffs shall seek, and T.RAD will not object unreasonably to, the entry of an order and final judgment in each Action, the text of which End-Payor Plaintiffs and T.RAD shall agree upon. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Classes, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as settlement classes;

(b)     as to the Actions, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims.

8

(d)    solely as to T.RAD, directing that the Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(e)    reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement, to the United States District Court for the Eastern District of Michigan;

(f)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to T.RAD shall be final; and

(g)    providing that (i) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any Defendant, including T.RAD, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Litigation or on the Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Classes as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

21.    This Agreement shall become final when (i) the Court has entered a final order in each Action certifying the Settlement Classes described in Paragraph 13 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment in each Action dismissing the Action with prejudice as to T.RAD and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to T.RAD described in (i) above in each Action has expired or, if appealed, approval of this Agreement and the final judgment in each Action as to T.RAD have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to

9

further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that End-Payor Plaintiffs and T.RAD have executed this Agreement, End-Payor Plaintiffs and T.RAD shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 26(h) or 44 of this Agreement.

      22.    Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them (including Cooperation Materials produced pursuant to Paragraphs 33-43), shall be deemed or construed to be (i) an admission by T.RAD, (ii) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by T.RAD to be used against T.RAD, or (iii) evidence to be used to establish against T.RAD the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation. Nor shall any of those matters be discoverable or used in any way, whether in the MDL Litigation, arbitration, or proceeding, against T.RAD. Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Paragraphs 33-43, against any other defendants in the MDL Litigation to establish any of the above, subject to the terms and conditions set forth in the Protective Order, except as stated in Paragraph 38(a) and (f). Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by T.RAD, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue.

23.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 21 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 25 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged in the Complaints, and (ii) any act or omission of the Releasees (or any of them) concerning Radiators or ATF Warmers, including but not limited to any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Actions (the "Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Radiators or ATF Warmers with respect to such direct purchasers; (2) any claims made by automotive dealerships that are indirect purchasers of Radiators or ATF Warmers; (3) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Radiators or ATF

11

Warmers; (5) claims concerning any automotive part other than Radiators or ATF Warmers; (6) claims under laws other than those of the United States or any state or municipality in the United States relating to purchases of Radiators or ATF Warmers made by any Releasor outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims.

24.     In addition to the provisions of Paragraph 23 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits, as to their claims concerning Radiators or ATF Warmers conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 23 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that T.RAD and End-Payor Plaintiffs have agreed to release pursuant to Paragraph 23, whether or not concealed or

12

hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.      Settlement Amount.

25.      Subject to the provisions hereof, and in full, complete and final settlement of the Actions as provided herein, Defendant T.RAD Corporation, on behalf of the T.RAD defendants, shall pay the Settlement Amount of US $7,410,000 (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 26 of this Agreement (the "Escrow Account") within 10 days following entry of an order preliminarily approving this Agreement.

26.      Escrow Account.

(a)      The Escrow Account will be established at Wells Fargo & Company with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and T.RAD, such escrow to be administered by the Escrow Agent under the Court's continuing supervision and control.

(b)      The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)      All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until

13

such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

        (d)      End-Payor Plaintiffs and T.RAD agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 26, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Amount being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.

        (e)      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent for the Escrow Account(s).  The Escrow Agent shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns (as well as the election described in Paragraph 25(d)) shall be consistent with Paragraph 26(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 26(f) hereof.

14

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon T.RAD or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 26(d) through 26(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 26(e) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither T.RAD nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  T.RAD shall not be responsible or have any liability therefor.  End-Payor Plaintiffs and T.RAD agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 26(d) through 26(f).

(h)     If this Agreement does not receive final Court approval, including final approval of the Settlement Classes as defined in Paragraph 13, or if the Actions are not certified

as class actions for settlement purposes, then all amounts paid by T.RAD into the Settlement Fund (other than costs expended or incurred in accordance with Paragraph 28), shall be returned to T.RAD from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days of the Court's denial of final approval of the Agreement and/or Settlement Classes.

27.    Exclusions from the Settlement Classes.

Subject to Court approval, any person or entity seeking exclusion from the Settlement Classes must file a written request for exclusion by the Opt Out Deadline, which shall be the date set by the Court by which any class member must request exclusion from the Settlement Class(es). Any person or entity that files such a request shall be excluded from the Settlement Classes and shall have no rights with respect to this settlement. Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon final approval. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide T.RAD with a list and copies of all opt out requests it receives and shall file under seal with the Court a list of all members of the Settlement Classes who timely and validly opted out of the settlement.

(a)    Subject to Court Approval, any member of the Settlement Classes who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. T.RAD reserves all of its legal rights and defenses, including but not limited to any defenses relating to whether any excluded member

16

of the Settlement Classes is an indirect purchaser of Radiators or ATF Warmers or has standing to bring any claim against T.RAD.

(b)     Subject to Court Approval, in the written request for exclusion, the member of the Settlement Classes must state his, her, or its full name, address, and telephone number. Further, the member of Settlement Classes must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement.

(c)     T.RAD or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

28.     Payment of Expenses.

(a)     T.RAD agrees to permit use of a portion of the Settlement Fund towards notice to the Settlement Classes and the costs of administration of the Settlement Fund. The notice and administration expenses are not recoverable if this settlement does not become final or is terminated to the extent such funds have actually been expended or incurred for notice and administration costs. Other than as set forth in this Paragraph 28 and Paragraph 38, T.RAD shall not be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

(b)     In order to mitigate the costs of notice and administration, the End-Payor Plaintiffs shall use their best efforts, if practicable, to disseminate notice with any other

17

settlements reached with T.RAD or other defendants in the MDL Litigation and to apportion the costs of notice and administration on a pro rata basis across the applicable settlements.

E.    The Settlement Fund.

29.    Releasors' sole recourse for settlement and satisfaction against the Releasees of all Released Claims is against the Settlement Fund, and Releasors shall have no other recovery against T.RAD or any other Releasee.

30.    After this Agreement becomes final within the meaning of Paragraph 20, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration except as expressly otherwise provided in Paragraph 28 of this Agreement.

31.    End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court Order.  T.RAD and the other Releasees shall not be liable for any costs, fees, or expenses of any of End-Payor Plaintiffs or the Settlement Classes' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

32.    Settlement    Class    Counsel's    Attorneys'    Fees,    Reimbursement of Expenses, and Incentive Awards for Class Representatives

(a)    Settlement Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in

18

connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall T.RAD or any other Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to Paragraph 26(h) or Paragraph 44.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to

19

terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither T.RAD nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Actions.

(e)     Neither T.RAD nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

F.     Cooperation.

33.     T.RAD agrees to use commercially reasonable efforts to provide timely Cooperation to End-Payor Plaintiffs, as set forth specifically below.  Cooperation will take place in a manner that is in compliance with T.RAD's obligations to any Government Entities (as defined below).  All Cooperation shall be coordinated so as to avoid all unnecessary duplication and expense.  None of the Cooperation obligations below limits Plaintiffs' ability to serve, or T.RAD's ability to object to, any other discovery request permitted under the Federal Rules of Civil Procedure.

34.     Within thirty (30) business days after Preliminary Approval, counsel for T.RAD shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of T.RAD who: (1) were interviewed and/or prosecuted by the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, and/or the European Commission (collectively referred to herein as "Government Entities") in connection with alleged price-fixing, bid rigging, market allocation, and/or other unlawful anticompetitive activity concerning the sale of Radiators or ATF Warmers to the extent such interviews or

20

prosecutions related in any way, directly or indirectly, to automobiles manufactured and sold in the United States; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Radiators or ATF Warmers; and/or (3) were disclosed to a Government Entity as having knowledge or information relating to alleged violations with respect to Radiators or ATF Warmers.

35.     T.RAD will use commercially reasonable efforts to substantially complete the production of the following Documents in T.RAD's possession, custody or control, set forth in subparagraphs (a) – (c) no later than one hundred fifty (150) calendar days after Preliminary Approval by the Court of this Agreement:

(a)     Certain automobile-related transactional data that are kept in the ordinary course of T.RAD's business, are reasonably available, and concern T.RAD's bids for and sales of Radiators and/or ATF Warmers to Original Equipment Manufacturers ("OEMs") or other purchasers of Radiators or ATF Warmers ("Transactional Data") from July 1, 1999, to August 30, 2011 (and to December 31, 2013 to the extent such information has already been compiled), including the following information: (1) the date for each bid, price submission, or sale; (2) the price submitted in each bid or price submission; (3) bids and price submissions formulated but not submitted due to agreements or understandings with co-conspirators; (4) the final price of each sale; (5) the purchaser to whom each bid or price submission was submitted and each sale was made; (6) the model, model year(s) and brand of car for which each bid or price submission was submitted and each sale was made, as well as the country of sale of said cars; (7) the total amount of Radiators or ATF Warmers sold in each sale; (8) the location where each bid or price submission was submitted and each sale was made; (9) the T.RAD entity which submitted each bid or price submission and made each sale; (10) the sale agreements and contracts for each sale;

21

(11) value engineering and/or other non-cash consideration that served as an element of value delivered in each sale; (12) any ancillary costs associated with each sale such as tooling costs; (13) the identity of any other bids submitted by competitors (to the extent known), including each winning bid; (14) the specifications for each bid or price submission; (15) adjustments made to each bid as it was being formulated; (16) T.RAD's profits, losses and margins on the products comprising Radiators or ATF Warmers and other reasonably available financial information, *e.g.*, balance sheets and ledger data; (17) data showing T.RAD's costs to produce the products comprising Radiators or ATF Warmers; (18) product description and identification information (including codes, identifiers, and/or part numbers); and (19) any other Transactional Data reasonably agreed to in writing between T.RAD's counsel and Settlement Class Counsel. T.RAD maintains that materials prior to July 1, 1999, are not readily available and cannot be compiled without unreasonable effort. Notwithstanding any other provision in this Agreement, Settlement Class Counsel agrees that it shall maintain all data that T.RAD will produce as "Highly Confidential," as said designation is described in the Protective Order, subject to any challenge that any party may make subject to the Protective Order and any orders of the Court.

(b) Documents relevant to the claims alleged in the Complaints or that relate to or concern an actual or potential communication, meeting, or agreement between T.RAD and one or more of its competitors, regarding Radiators or ATF Warmers.

(c) To the extent not already produced, Documents, if any, produced to, or seized by, Government Entities and relevant in any way, directly or indirectly, to the claims alleged in the Complaints and relating to their investigation into alleged competition violations with respect to Radiators or ATF Warmers installed in vehicles sold in the United States.

(d)     Documents concerning T.RAD's determinations of its prices for Radiators and ATF Warmers that it sells, including pricing policies, formulas and guidelines, including Documents concerning the relationship between prices charged or submitted to different OEMs or to the same OEM for different models.

(e)     Non-privileged documents, if any, concerning ATF Warmers and/or Radiators that were collected and reviewed in connection with T.RAD's internal investigation but were not provided to or seized by Government Entities and that are relevant to the claims and allegations in the Complaint or that relate to or concern an actual or potential communication, meeting, or agreement regarding Radiators by any employee, officer or director of T.RAD with any employee, officer or director of another manufacturer or seller of ATF Warmers or Radiators.

(f)     Documents, if any, showing how T.RAD's employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers, for Released Parts, in RFQs, or any other procurement process, including documents stating the lowest bid or price employees were authorized to submit, how to determine the lowest allowable bid or price, and when and how to increase or decrease a proposed bid or price.

36.     For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work-product doctrine; (3) a protective order, or (4) any other applicable privilege or doctrine protecting documents from disclosure, T.RAD shall provide a privilege log, to the extent it already exists or comes into existence as a result of the MDL Litigation or otherwise ("Existing Privilege Log"), describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents.  No Document shall be withheld under a claim of privilege if Produced to any

Government Entity. If any Document protected by the attorney-client privilege, attorney work-product protection or any other privilege is accidentally or inadvertently produced to Settlement Class Counsel, upon notice by T.RAD of such inadvertent production, the Document shall promptly be destroyed and/or returned to T.RAD, the Document shall not be used by Settlement Class Counsel for any purpose, and its production shall in no way be construed to have waived any privilege or protection attached to such Document. Any dispute regarding any claim of privilege shall be resolved by motion to the Court under Paragraph 51 of this Agreement.

37.    In the event that T.RAD produces Documents or provides declarations or written responses to discovery to any Government Entity or party in the MDL Litigation concerning or relating to the Actions (a "Relevant Production"), T.RAD shall produce all such Documents, declarations or written discovery responses to Settlement Class Counsel contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by T.RAD to Settlement Class Counsel. This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in the Actions. T.RAD will not object to Settlement Class Counsel and settlement class counsel for the automobile dealerships ("Automobile Dealership Settlement Class Counsel") in the actions in the MDL Litigation captioned Martens Cars of Washington, Inc. v. T.RAD Co., Ltd. (14-cv-10593-MOB-MKM) and its dealership class case (13-cv-02402) and Martens Cars of Washington, Inc. v. Calsonic Kansei Corp. (13-cv-11590-MOB-MKM) and its dealership class case (13-cv-01002) ("Automobile Dealership Actions") attending and/or participating in depositions of T.RAD witnesses in addition to the depositions set forth in Paragraph 38(c), to the extent Settlement Class Counsel and Automobile Dealership Settlement

Class Counsel participation does not expand the time allotted for the deposition pursuant to applicable stipulations or orders in the MDL Litigation.

38. In addition, T.RAD shall use reasonable efforts to cooperate with Settlement Class Counsel as set forth in Paragraphs 38(a)-(e). Upon reasonable notice after preliminary approval of the Settlement Agreement, T.RAD shall make available for interviews with and depositions by with Settlement Class Counsel, jointly with Automobile Dealership Settlement Class Counsel, a reasonable number of individuals, expressly subject to the right of Settlement Class Counsel and Automotive Dealership Settlement Class Counsel to also attend and/or participate in any depositions in the MDL Litigation. Only the same individuals identified pursuant to Paragraph 38(b) can be identified as the individuals pursuant to Paragraph 38(c).

(a) Commencing 30 days after the Court enters an Order granting preliminary approval of this Agreement, T.RAD's counsel will make themselves reasonably available in the United States for meetings to provide an attorney's proffer jointly to Settlement Class Counsel and Automobile Dealership Settlement Class Counsel of facts known to them regarding Documents, witnesses, meetings, communications, agreements with competitors, events, background information and any other relevant topics not covered by privilege or other protections available under any applicable statute or United States law. Thereafter, T.RAD's counsel will make themselves available for reasonable follow-up conversations. Notwithstanding any other provision in this Agreement, Settlement Class Counsel shall maintain all statements made by T.RAD's counsel as "Highly Confidential," as said designation is described in the Protective Order, and shall not use the information so received for any purpose other than the prosecution of the claims in the Actions and the MDL Litigation, except as stated in Paragraph 38(a) and (f). The parties further agree that any statements made by T.RAD's counsel in

25

connection with and/or as part of this settlement, including the attorney's proffer(s) referred to in Paragraph 38(a), shall not be disclosed to any other party and shall be governed by Federal Rule of Evidence 408 and, shall not be deemed admissible into evidence or to be subject to further discovery. Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of the Actions and the MDL Litigation, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(b)    Upon reasonable notice after Preliminary Approval of this Agreement, T.RAD shall make reasonable efforts (not to include actual or threatened employee disciplinary action) to make available for interviews, depositions, and testimony at hearings or trial, via videoconference or at a mutually agreed-upon location or locations (except for testimony at hearings or trial), a reasonable number of persons for interviews and depositions (as set forth in Paragraphs 38(b) and (c)) to be agreed upon, and a reasonable number of persons for trial (as set forth in Paragraph 38(d)) whom Settlement Class Counsel and Automobile Dealership Settlement Class Counsel select, and who may consist of current directors, officers, and/or employees of T.RAD whom Settlement Class Counsel reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist End-Payor Plaintiffs in the prosecution of the MDL Litigation. Interviews shall each be limited to a total of seven (7) hours over one day. To the extent that the person to be interviewed requests an interpreter, (x) interviews shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days, but for no more than seven (7) hours in any one day, and (y) Settlement Class Counsel shall retain or reimburse the reasonable expenses of retaining the interpreter. Upon

26

reasonable notice by Settlement Class Counsel, T.RAD shall use reasonable efforts to make available by telephone the persons who have been interviewed as set forth in this Paragraph to answer follow-up questions for a period not to exceed two (2) hours. Unless otherwise agreed, the interview will take place in the United States at a mutually agreeable location. If the interviews take place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse T.RAD for such person's economy class fare and $450 per day for lodging and expenses, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Reimbursable expenses shall not exceed $1,500 per interviewee. If the interview and the below-described deposition occur during the same trip, the above-limitations will apply to that trip. Nothing in this provision shall prevent T.RAD from objecting to the reasonableness of the number of persons selected by Settlement Class Counsel and Automobile Dealership Settlement Class Counsel to appear as trial witnesses.

(c)     Upon reasonable notice, T.RAD shall, at Settlement Class Counsel's request, make reasonable efforts (not to include actual or threatened employee disciplinary action) to make available to appear for deposition (i) a reasonable number of persons to be agreed upon whom Settlement Class Counsel and Automobile Dealership Settlement Class Counsel select from among the persons who have been chosen for interviews pursuant to Paragraph 38(b), and to provide (ii) a reasonable number of declarations/affidavits from among the same persons who have been chosen for interviews and depositions pursuant to Paragraph 38(b) and Paragraph 38(c). Each deposition shall be conducted at a mutually agreed-upon location in the United States, and shall each be limited to a total of seven (7) hours over one day. To the extent that the person to be deposed requests an interpreter, (x) the deposition shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days, but for

27

no more than seven (7) hours in any one day, and (y) Settlement Class Counsel shall retain or reimburse the reasonable expenses of retaining the interpreter. Written notice by Settlement Class Counsel to T.RAD's counsel shall constitute sufficient service of notice for such depositions. If Settlement Class Counsel request declarations/affidavits, such affidavits and declarations will be provided in English. If any deposition takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse T.RAD for such person's economy class fare and $450 per day for lodging and expenses, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Reimbursable expenses shall not exceed $1,500 per witness.

(d)     Upon reasonable notice, T.RAD shall make reasonable efforts to provide, for trial testimony, if necessary, a reasonable number of T.RAD persons from among the persons who have been interviewed or deposed pursuant to Paragraphs 38(b) and 38(c) or otherwise deposed in the MDL Litigation, as referenced in Paragraph 37, which may consist of current directors, officers, and/or employees of T.RAD whom Settlement Class Counsel, in consultation with counsel for T.RAD, reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist End-Payor Plaintiffs as a trial witness in the Actions. Nothing in this provision shall prevent T.RAD from objecting to the reasonableness of the number of persons selected by Settlement Class Counsel and Automobile Dealership Settlement Class Counsel. If any requested trial testimony takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse T.RAD for such person's economy class fare and $450 per day for lodging and expenses, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Reimbursable expenses shall not exceed $1,500 per witness. In addition, if the witness requests

28

an interpreter and one is not provided by the Court, Settlement Class Counsel shall retain or reimburse the reasonable expenses of retaining the interpreter.

(e)     In addition to its Cooperation obligations set forth herein, T.RAD agrees to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any of T.RAD's Documents and Transactional Data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties in the Actions. Settlement Class Counsel agree to use reasonable efforts to obtain stipulations that would avoid the need to call T.RAD witnesses at trial for the purpose of obtaining such evidentiary foundations.

(f)     End-Payor Plaintiffs and Settlement Class Counsel agree they will not use the information provided by T.RAD or the other Releasees or their representatives under this Agreement for any purpose other than the prosecution of claims in the MDL Litigation, and will use it in the Actions consistent with the Protective Order, and will not use it beyond what is reasonably necessary for the prosecution of claims in the MDL Litigation or as otherwise required by law. All Documents and other information provided pursuant to this Agreement will be deemed "Highly Confidential", as said designation is described in the Protective Order as if they had been produced in response to discovery requests and so designated.

39.     T.RAD's obligations to provide Cooperation shall not be affected by the releases set forth in this Settlement Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, T.RAD's obligations to provide Cooperation under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been entered in the Actions against all Defendants, whichever occurs earlier.

29

40.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 17-21 hereof, including final approval of "the Settlement Classes" as defined in Paragraph 13, or in the event that it is terminated by either party under any provision herein, the parties agree that neither End-Payor Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against T.RAD, at any hearing or trial, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Action, any deposition testimony or any documents provided by T.RAD and/or the other Releasees, their counsel, or any individual made available by T.RAD pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).  This limitation shall not apply to any discovery of T.RAD which Settlement Class Counsel participates in as part of the MDL Litigation.  Notwithstanding anything contained herein, End-Payor Plaintiffs and the Settlement Classes are not relinquishing any rights to pursue discovery against T.RAD in the event that this Agreement fails to receive final approval in each Action by the Court as contemplated in Paragraphs 17-21 hereof, including final approval of "the Settlement Classes" as defined in Paragraph 13, or in the event that it is terminated by either party under any provision herein.

41.     T.RAD need not respond to discovery requests made pursuant to the Federal Rules of Civil Procedure from End-Payor Plaintiffs or otherwise participate in the Actions pending the Court's final approval of the Agreement.  Other than to enforce the terms of this Agreement, neither T.RAD nor End-Payor Plaintiffs shall file motions against the other, in the Actions, during the pendency of the Agreement.

42.     T.RAD, End-Payor Plaintiffs, and Settlement Class Counsel agree not to disclose publicly or to any other person the terms of this Agreement that were not already disclosed as

30

part of disclosure of the parties' prior Memorandum of Understanding until this Agreement is fully executed by all parties.

43.     If Settlement Class Counsel believes that T.RAD has refused to cooperate under the terms of this Agreement, Settlement Class Counsel may seek an Order from the Court compelling T.RAD to provide such cooperation. Nothing in this provision shall limit in any way T.RAD's ability to defend the level of cooperation it has provided or to defend its compliance with the terms of the cooperation provisions in this Agreement.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered

44.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify settlement classes in accordance with the specific Settlement Class definitions set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 21 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then T.RAD and End-Payor Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 56. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

45.     In the event that this Agreement does not become final as set forth in Paragraph 21, or this Agreement otherwise is terminated pursuant to Paragraph 44, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to T.RAD

31

less only disbursements made in accordance with Paragraph 28 of this Agreement. T.RAD expressly reserves all rights and defenses if this Agreement does not become final.

46. Further, and in any event, End-Payor Plaintiffs and T.RAD agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by T.RAD, or the other Releasees to be used against T.RAD, or of (ii) the truth of any of the claims or allegations contained in the Complaints or any other pleading filed in the MDL Litigation, to be used against T.RAD, and evidence thereof shall not be discoverable or used in any way, in the MDL Litigation, against T.RAD. Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 33-43, against any other defendants in any actions to establish any of the above.

47. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as cooperation by T.RAD.

48. The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 17-21 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the Court will consider the approval of this Agreement, will be given to End-Payor Plaintiffs and Settlement Class Members.

H. Miscellaneous.

49. T.RAD shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

50.     This Agreement does not settle or compromise any claim by End-Payor Plaintiffs or any Settlement Class Member asserted in the Complaints or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than T.RAD and the other Releasees. All rights against such other Defendants or alleged co-conspirators are specifically reserved by End-Payor Plaintiffs and the Settlement Classes. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than T.RAD and the other Releasees, for sales made by T.RAD and T.RAD's alleged illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. T.RAD's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than T.RAD and the other Releasees. T.RAD shall not be responsible for any payment to End-Payor Plaintiffs other than the amount specifically agreed to in Paragraph 25 of this Agreement.

51.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by End-Payor Plaintiffs and T.RAD, including challenges to the reasonableness of any party's actions. This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles. T.RAD will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

33

52.     This Agreement constitutes the entire, complete and integrated agreement among End-Payor Plaintiffs and T.RAD pertaining to the settlement of the Actions against T.RAD, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between End-Payor Plaintiffs and T.RAD in connection herewith. This Agreement may not be modified or amended except in writing executed by End-Payor Plaintiffs and T.RAD, and approved by the Court.

53.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of End-Payor Plaintiffs and T.RAD. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by End-Payor Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than T.RAD entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

54.     This Agreement may be executed in counterparts by End-Payor Plaintiffs and T.RAD, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

55.     Neither End-Payor Plaintiffs nor T.RAD shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

56.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that no

notice of rejection or non-delivery notification is received), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to Court approval.

*[signature pages follow]*

35

Date: ~~July~~ *August 12*, 2015

/s/ *Marc M. Seltzer*

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY LLP**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933

Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Joanna W. LiCalsi
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499

*Interim Co-Lead Class Counsel and Settlement Class Counsel*

36

Dated: July 30, 2015

T.RAD CO., LTD.

By: _____
      Hiromi Kano
      President & Representative Director

T.RAD NORTH AMERICA, INC.

By: _____
      Hiromi Kano
      Authorized Signer

/s/ _____
Peter L. Simmons
Steven M. Witzel
FRIED, FRANK, HARRIS, SHRIVER &
  JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8455
Facsimile: (212) 859-4000

Thomas J. Tallerico
Jason R. Gourley
BODMAN PLC
201 West Big Beaver Road, Suite 500
Troy, Michigan 48084
Telephone: (248) 743-6073
Facsimile: (248) 743-6002

*Attorneys for T.RAD Co., Ltd. and*
*T.RAD North America, Inc.*

37